# No. 25-50409
# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

―――――――――

Securities and Exchange Commission;  Albert Black, III
Plaintiffs-Appellees

v.

Roy W. Hill,
Defendant-Appellant

―――――――――

On Appeal from the United States District Court for the
Western District of Texas, Waco Division
Civil Action No. 6:23-CV-321

―――――――――

## BRIEF OF APPELLANT
## ROY W. HILL

―――――――――

SUBMITTED BY;
Richard Fuqua
Fuqua & Associates, PC
8558 Katy Freeway, Suite 119
Houston, Texas 77024
[Tel.] 713-960-0277
[Fax] 713-960-1064
Rlfuqua@fuqualegal.com
*Counsel for Defendant-Appellant Roy W. Hill*

# No. 25-50409
# In the
# United States Court of Appeals
# for the Fifth Circuit

---

Securities and Exchange Commission;  Albert Black, III
Plaintiffs-Appellees

v.

Roy W. Hill,
Defendant-Appellant

---

On Appeal from the United States District Court
for the Western District of Texas, Waco Division
Civil Action No. 6:23-CV-321

---

## CERTIFICATE OF INTERESTED PERSONS

---

The undersigned counsel of record certifies that the following listed persons

and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have

an interest in the outcome of this case.  These representations are made in order

that the judges of this Court may evaluate possible disqualification or recusal:

1.  Defendant-Appellant: Roy W. Hill
Counsel for Defendant-Appellant Roy W. Hill:

Richard Lee Fuqua
Texas Bar No. 07552300
Fuqua & Associates, PC
8558 Katy Freeway, Suite 119
Houston, Texas 77024
[Tel.] 713-960-0277
[Fax] 713-960-1064
Rlfuqua@fuqualegal.com

2.  Plaintiff-Appellee: Securities and Exchange Commission
Counsel for Plaintiff-Appellee Securities and Exchange Commission:

 Jennifer D. Reece
Texas Bar No. 00796242
Direct phone: (817) 978-6442
reecej@sec.gov
Jason J. Rose
Texas Bar No. 24007946
Direct phone: (817) 978-1408
rosej@sec.gov
United States Securities and Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, Texas 76102

3.  Receiver-Appellees: Albert C. Black III
Counsel for Receiver-Appellees: Albert C. Black III:
Dennis L. Roossien, Jr.

iii

Texas Bar No. 00784873
Munsch Hardt Kopf & Harr, P.C.
5090 N. Akard Street, Suite 4000
Dallas, Texas 75201-6659
Telephone: 214-855-7535
droossien@munsch.com

/s/ *Richard Lee Fuqua*

_____
Richard Lee Fuqua
Attorney of record for
Roy W. Hill,
Defendant-Appellant

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellant Roy W. Hill requests Oral Argument.  This appeal presents issues that are factually intensive, and Defendant-Appellant Hill believes the Court would benefit from hearing counsel explain certain details that may shed further light upon the procedures leading up to this appeal.  Counsel believes that this Court's disposition of this case would be aided by oral presentation to this Court and it is in an understanding of the nuances in the facts of this matter that oral argument would be beneficial.

# TABLE OF CONTENTS

Certificate of Interested Persons. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii-iv

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v-vii

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .vi-vii

Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of the Issues Presented for Review. . . . . . . . . . . . . . . . . . . . . . . . 2-3

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-7

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-20

    I. The Court's Orders of March 7, 2025, Approving Liquidation and Interim Distribution and the Court's denial of Reconsideration of that order, signed on April 23, 2025, should be reversed for no evidence . . . . . . . . . . . . . . 9-14


    II. The Court's Orders of March 7, 2025, Approving Liquidation and Interim Distribution and the Court's denial of Reconsideration of that order, signed on April 23, 2025, should be reversed for abuse of discretion . 14-18

III.  The Court's Orders of March 7, 2025, Approving Liquidation and Interim Distribution and the Court's denial of Reconsideration of that order, signed on April 23, 2025, should be reversed for failure to follow 28 U.S.C. §§ 2001, 2002 and 2024. . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . 18-20

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22-23

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## TABLE OF AUTHORITIES

**Cases**

*Caminetti v. United States*,
242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917). . . . . . . . . . . . . . . . . . 19

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*
530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000). . . . .. . . . . . . . . . . . . 18

*Lamie v. United States Trustee*,
540 U.S. 526, 534,  124 S.Ct. 1023, 1030 (2004) . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026,
103 L.Ed.2d 290 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18-19

**Statutes**

28 U.S.C. § 1292(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

28 U.S.C. § 2001. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi, 3, 8, 18, 19, 20

28 U.S.C. § 2002. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi, 3, 8, 18, 19, 20

28 U.S.C. § 2004. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi, 3, 8, 18, 19, 20

**Rules**

Fed. R. Civ. P. 59(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. App. P. 4(a)(4)(A)  . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . 2

# No. 25-50409
# In the
# United States Court of Appeals
# for the Fifth Circuit

---

Securities and Exchange Commission;  Albert Black, III
Plaintiffs-Appellees

v.

Roy W. Hill,
Defendant-Appellant

---

On Appeal from the United States District Court
for the Western District of Texas, Waco Division
Civil Action No. 6:23-CV-321

---

# BRIEF OF APPELLANT
# ROY W. HILL

---

## JURISDICTIONAL STATEMENT

This Honorable Court of Appeals has jurisdiction over this appeal under 28 U.S.C. **§**1292(a)(2) because this appeal arises from an Interlocutory Decision directing sales or other disposals of property by Order Denying Motion for Reconsideration dated the 23rd day of April, 2025, against Defendant-Appellant from a US District Court for the Western District of Texas–Waco Division, based on the Court's Order entitled Order Approving Liquidation and Interim Distribution dated the 7th day of  March, 2025, and because the Motion for Reconsideration was timely filed within the twenty-eight days allowed under Federal Rules of Civil Procedure Rule 59 (b) and a Notice of Appeal was timely filed within the 30 days allowed under the Federal Rules of Appellate Procedure, Rule 4(a)(4)(A) from the entry of the order disposing of the last such remaining motion, here the Order denying Appellant's Motion for Reconsideration.


## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.  Should the Court's Orders of March 7, 2025, Approving Liquidation and Interim Distribution and the Court's denial of Reconsideration of that order, signed

on April 23, 2025, be reversed for no evidence.

2.     Should the Court's Orders of March 7, 2025, Approving Liquidation and Interim Distribution and the Court's denial of Reconsideration of that order, signed on April 23, 2025, be reversed for abuse of discretion.

3.  Should the Court's Orders of March 7, 2025, Approving Liquidation and Interim Distribution and the Court's denial of Reconsideration of that order, signed on April 23, 2025, be reversed for failure to follow 28 U.S.C. §§ 2001, 2002 and 2004.

## STATEMENT OF THE CASE

On May 3, 2023, the Securities and Exchange Commission filed its Complaint [ROA. 15] against Defendants Roy W. Hill (Hill), Eric N. Shelly (Shelly), Clean Energy Technology Association, Inc. (CETA) and Freedom Impact Consulting, LLC (FIC).

By Order Appointing Receiver signed on May 3, 2023, the Court appointed Albert ("Tre") Black, III as Receiver. [ROA. 311].

The Court signed a Judgment as to liability as to  Defendant Eric N. Shelly on August 8, 2023 [ROA. 494] .

The Court signed a Judgment as to liability as to Defendant Roy W. Hill on August 25, 2023. [ROA. 523] . Section IV of that order specifically stated that the Court shall determine damages at a later date. [ROA. 525].

The Receiver proceeded to secure property of all Defendants. In the Receiver's pleading filed on April 1, 2024, and entitled Motion for Instructions Concerning CETA Liquidation and Interim Distribution [ROA. 987] , the Receiver's asked for the Court's guidance as to liquidation of the two plants and equipment and interim distribution of "frozen CETA cash and marketable securities . . . ." [ROA. 996] .

The personal and real property of Shelly and FIC are not at issue in this appeal.

However, CETA has two multi-acre plants in Freestone County, Texas and there are considerable funds in what the Receiver calls "frozen CETA cash and marketable securities," which the Receiver estimated to be in the $66 million range [ROA. 996] . Further, there were entities other than CETA or Hill that the Receiver seized or had frozen and the connections of these non-CETA entities to the issues in the District Court lawsuit are hotly disputed.

With regard to the Shelly and FIC accounts, the Receiver gave distinctive

descriptions, including the financial institutions involved and the amounts seized from those various financial institutions, in addition to real and personal property seized from Shelly and FIC. [ROA. 1531].  However, with regard to CETA and Hill, the Receiver failed to set out financial institutions and amounts involved and account numbers.

On April 1, 2024, the Receiver filed his Motion for Instructions Concerning CETA Liquidation and Interim Distribution, arguing that "most [of the equipment] will have to be sold for scrap.  [ROA. 996] .

On May 6, 2024, Hill filed his Response Objecting to Receiver's Motion for Instructions Concerning CETA Liquidation and Interim Distribution.  [ROA. 1035].

Hill argued that the equipment had commercial value and attached two affidavits from representatives of parties interested in inspecting the sites and making bids on the plants and equipment.  [ROA. 1035] and [ROA. 1039].

On July 18, 2024, Hill filed his Request for Hearing  on the Receiver's Request for Instructions [ROA. 1148] .  Hill's Request included a detailed email to Receiver regarding the proposed procedure (Attachment A on page 7) and  also attached Exhibits to the Request for Hearing, showing that there were still

interested potential buyers (pages 3 and 14).

One week later, the Receiver filed Response to Motion for Hearing, arguing that Hill's "motion seeking an evidentiary hearing on Receiver's Motion for Instructions (Doc. 75) should be denied." [ROA.1166] .

Over five months later, the Court sent out its Order Setting Zoom Receivership Hearing.   That order said the court would only hear arguments regarding ECF Nos. 75, 80 and 84.   It also said that it would "not be an evidentiary hearing, but rather a hearing based on the briefing in the aforementioned motions." [ROA. 1497].   After one rescheduling [ROA. 1498] that only changed the time and date of the hearing  that Zoom hearing took place on February 28, 2025.   A transcript of the hearing was filed as Doc.115.    Both Hill [ROA. 1559] and the Receiver [ROA. 1563] filed pre-hearing briefs.

On March 7, 2025, the Court signed its Order Approving Liquidation and Interim Distribution [ROA. 1603] allowing the Receiver to "liquidate the CETA equipment" and abandon the CETA technology and, after opportunity for objections, to undertake a "pro-rata interim distribution of two-thirds of the aggregate value of the then available CETA cash and/or securities . . . ."   [ROA. 1603].   The Court made no finding as to what dollar amount it was referencing nor

how those monies were to be identified.

On April 3, 2025, Defendant Hill filed an Opposed Motion for Reconsideration of Court's Order of March 7, 2025,[ROA. 1647].

On April 6, 2025, the Receiver filed his Response to Motion for Reconsideration of Court's Order of March 7, 2025. [ROA. 1660].

On April 22, 2025, Hill filed his Reply to Response. [ROA. 1670]. The next day, on April 23, 2025, the Court signed its Order Denying Motion for Reconsideration. [ROA.1676] .

On May 21, 2025, Hill filed his Notice of Appeal. [ROA. 1772].

## SUMMARY OF THE ARGUMENT

The prime goal of a receivership should be to maximize the size of the receivership estate. Here, the Receiver wants to sell the equipment at scrap prices. The Receiver opposed even allowing serious parties from running an inspection of the equipment with their own money (up to $125,000) to see if they wanted to bid more than scrap value. The Court, by restricting the pleadings it would consider and by not allowing an evidentiary hearing, prevented interested parties from making bids. The Court's procedures amounted to an abuse of discretion, a

no evidence ruling and a violation of the procedures set forth in 28 U.S.C. §§ 2001, 2002 and 2004. Further, because of the Receiver's failure to identify exact accounts seized or frozen, the Receiver has not met his burden of proof as to what constitutes CETA cash and/or securities, which means that the portion of the Court's Order approving a percentage distribution of an unspecified and undefined sum of money to be an abuse of discretion and without evidence.

For these reasons, the Court's Court's Orders of March 7, 2025, Approving Liquidation and Interim Distribution and the Court's denial of Reconsideration of that order, signed on April 23, 2025, should be reversed.

## STANDARD OF REVIEW

Questions of law are reviewed de novo. The Court's Order setting the matter in question clearly states that the hearing was non evidentiary [ROA. 1497]. Further, the Court's Orders of March 7, 2025, and April 23, 2025, were conclusionary and gave no indications for the Court's reasoning for the rulings. When a Court fails to give reasons for the ruling, a review of the decision de novo is proper.

8

# ARGUMENT

## I.  The Court's Orders of March 7, 2025, Approving Liquidation and Interim Distribution and the Court's denial of Reconsideration of that Order, signed on April 23, 2025, should be reversed for no evidence.

A dispute arose between the Receiver and Hill as to whether to allow interested parties the chance to evaluate the plants and equipment by firing it up in order for theses potential buyers to make a bid on the plants and equipment before it was sold as scrap .

On April 1, 2024, the Receiver filed his Motion for Instructions Concerning CETA Liquidation and Interim Distribution. [ROA. 987].  The Receiver concluded that "While some of the equipment can be sold for use elsewhere, most will have to be sold for scrap."  [ROA. 96] .

On May 6, 2024, Hill filed his Response Objecting to Receiver's Motion for Instructions Concerning CETA Liquidation and Interim Distribution.  [ROA. 1030].  Hill argued that the equipment had commercial value and attached two affidavits from representatives of parties interested in inspecting the sites and making bids on the equipment.

9

On July 18, 2024, Hill filed his Request for Hearing  on the Receiver's Request for Instructions [ROA. 1148] .  Hill's Request included a detailed email to Receiver regarding the proposed procedure (Attachment A on page 7) and  also attached Exhibits to the Request for Hearing, showing that there were still interested potential buyers (pages 3 and 14).

One week later, the Receiver filed Response to Motion for Hearing, arguing that Hill's "motion seeking an evidentiary hearing on Receiver's Motion for Instructions (Doc. 75) should be denied." [ROA. 1166] .

Over five months later, the Court, on its own Order set a Zoom hearing, specifically related only to Doc. 75 (Receiver's Motion for Instructions)[ROA. 987] ; Doc. 80 (Hill's Response and Objections) [ROA. 1030] ; and Doc. 84(Receiver's Response to Hill's Reply)  [ROA. 1109] .  The Court's Order specifically stated that "This hearing will not be an evidentiary hearing, but rather a hearing based on the briefing in the aforementioned motions." [ROA. 1497].

The Receiver's notion that the equipment is only worth scrap value is largely based on selected quotes cited by the Receiver from an as yet undisclosed report presumably authored by  Byron Veech.  It is telling, however, that no expert report from Mr. Veech is attached to any pleading, although Receiver repeatedly refers

to Veech as an expert at [ROA. 1112].  Instead, Receiver offers only selected quotes from portions of an alleged report from Veech.  Hill has requested a complete copy of the alleged report from Veech, and even filed Document 76 ([ROA. 1001] ) which was Hill's Objection to Receiver's Fourth Interim Fee Application for the very reason that Receiver refused (and still refuses) to provide Hill with a copy of the complete expert report from Veech.

The Receiver argues in Section 9 of Receiver's Response to Motion for Reconsideration [ROA. 1660] that he does not have to provide the report from Veech because "Mr. Veech has not been listed as an expert in a case headed to trial.  As a result, there is no obligation for the Receiver to provide a separate expert report."  The requirement of providing expert reports is not limited to trial experts.  By using Veech in various motions, the Receiver should have provided a complete report and Veech's testimony and the summaries thereof should be stricken.

In contrast, in his Response Objecting to Receiver's Motion for Instructions [ROA. 1030] Hill attached two affidavits from representatives of potential buyers, who are interested in firing up the plants to see its current condition before making bids that should surely  exceed scrap value. [ROA. 1035] and   [ROA. 1039].

11

Importantly, Hill's Response [ROA. 1120] contains an affidavit of Douglas Matheney that notes that "no one is going to pay what it [the CETA equipment] is really worth without seeing it in operation." Further, Matheney offers to put up to $125,000.00 "to pay the costs directly to the parties that will perform the tasks involved in this process [of firing up the plants]." [ROA. 1120 at 1123-1124]. This offer of significant funds shows that this is not just a battle of experts. Hill has produced two affidavits from different buyer groups that are interested in acquiring the CETA equipment, and Matheney's affidavit shows that this is not just a hypothetical interest, but one involving serious interest with a commitment of up to $125,000 to see if the plants can be fired up.

Hill argues that the failure of the Receiver to produce the report of its expert Mr. Veech in its entirety makes it inadmissible and the sworn affidavits Mr. Hill produced are evidence that the equipment had potential value beyond scrap.

The act of the Court in setting a non-evidentiary hearing to only consider limited pleadings makes the Court's decision one based on no evidence and in the face of evidence to the contrary of the Court's decision. For that reason, the Court erred in its Order granting the Receiver the right to liquidate the equipment.

By way of further argument, Hill also points out that five patents had been

granted over CETA technology, which is some evidence that said technology had value and should not be simply abandoned, as the Court ordered in Section (3) of its Order [ROA. 1603].

Patent Number 10,174,256 B2 was issued on January 8, 2019, for a Carbon-Based Feedstock Processing System. Patent Number 10,174,257 B2 was issued on January 8, 2029, for a Cooler for Carbon-Based Feedstock Processing System. Patent Number 10,180,284 B2 was issued on January 15, 2019, for an In-Feed Hopper and Meter for Carbon-Based Feedstock Processing System. Patent Number 10,650,710 B2 was issued on May 5, 2020, for a Distillation Unit for Carbon-Based Feedstock Processing System. Patent Number 10,793,778 B2 was issued on October 6, 2020, for a Cooler for Carbon-Based Feedstock Processing System. Patent Number 11,326,835 B2 was issued on May 10, 2022, for an In-Feed Hopper and Meter for Carbon-Based Feedstock Processing System. [ROA. 25-50409.1647, page 7].

These patents are unrelated to the CO2 capture units made the basis of this lawsuit. The patents have value both on their own and as part of the plants that the potential buyers are interested in. The cost of renewal for these patents is minimal. The current USPTO Fee Schedule indicates that the fees due at each maintenance

interval are as follows: 3-3.5 years: $2,000 for large entities and $800/$400 for small/micro entities. There was no evidence that these patents were connected to any Ponzi scheme or that they were without value. Patents are expensive to secure, and five patents are presumed to have value beyond zero. The Court erred in ordering them abandoned.

Because there was no evidence to reach the conclusions the Court reached, the Court's Orders of March 7, 2025, Approving Liquidation and Interim Distribution and the Court's denial of Reconsideration of that order, signed on April 23, 2025, should be reversed.

**II.  The Court's Orders of March 7, 2025, Approving Liquidation and Interim Distribution and the Court's denial of Reconsideration of that order, signed on April 23, 2025, should be reversed for abuse of discretion.**

 Many of the facts illustrating the No Evidence argument and the Abuse of Discretion argument are virtually the same facts. Appellant offers this preface to the abuse of discretion argument in an attempt to distill the distinction between the

two arguments. The essence of the argument on No Evidence is the Court's Order of January 7, 2025, which clearly sets forth the fact that the Court viewed its decision making process as not requiring evidence when it wrote, "This hearing will not be an evidentiary hearing . . . ." [ROA. 1407] .

The gravamen of the abuse of discretion argument lies in the Court's Orders of March 7, 2025, and April 23, 2025, because the Court gave no reasoning in its decision in an area of this case that is so significant that it requires explanation. The Court's Order of March 7, 2025, sets out the Court's conclusions, but is bereft of the findings of fact that underlie the conclusions.

The only part of the Court's Order of March 7, 2025, that approaches a finding of fact is in the introductory paragraph, wherein the Court states, " . . . and the Court, finding that the Receiver has correctly assessed the CETA technology and has proposed an equitable distribution plan, instructs the Receiver as follows:" [ROA. 1603].

The reference to "CETA technology" is a clear reference to the CETA patents, as is proven by Section (3) of the Order allowing the Receiver to "abandon CETA technology." The patents involved are not related to the carbon capture equipment made the basis of the Ponzi issues. Further, the fact that potential

buyers were interested in firing up the plants in order to make a bid shows that the technology has some value. The Patent Office, in granting the patents, made a finding that the ideas were unique and worthy of protection. Mr. Veech's selected statements do not show his qualifications to dispute the PTO and the Court failed to set out the facts that lead the Court to the position that "the Receiver has correctly assessed the CETA technology." The absence of an explanation for the Court's conclusion is an abuse of discretion.

As to the proposal of "an equitable distribution plan," the Court wholly failed to explain exactly what are the "then available CETA cash and/or securities . . . ." [ROA. 1603] . The Receiver's refusal to spell out what exactly are the cash and security accounts that he considers CETA cash and securities makes the absence of an explanation of what the Court considers the cash and securities to be an abuse of discretion.

In Receiver's Response to Motion for Reconsideration [ROA. 1660] , the Receiver, in Section 26 on page 8, fully reveals his flawed method. The Receiver, in ROA. 1531 carefully sets out the Shelly assets, identifying the several accounts by name and amount in the financial institutions where the money came from and giving account numbers. In contrast, the Receiver does not do anything like this

for the CETA funds.    Instead, as the Receiver set out in Paragraph 108 of Receiver's Quarterly Report for the Fourth Quarter of 2024 [ROA. 1500] the Receiver takes the total cash on hand and subtracts the Shelly cash and calls the remainder the CETA cash.   The reference to Exhibit A is to ROA. 1529.

Again, there is no breakdown as to what accounts the Receiver used to determine the amount of CETA cash.   Thus, there is no evidence as to which accounts the Receiver has seized and considers CETA funds.  The Court's Order of March 7, 2025, allowing "two-thirds of the aggregate value of the then available CETA cash and/or securities . . ." [ROA. 1603] to be distributed without explanation of what accounts are used to reach the total is an abuse of discretion.

Section (1) of the Court's Order of March 7, 2025, allows the Receiver to "liquidate CETA equipment . . . " [ROA. 1603] .  There is no explanation from the Court as to how it reached this finding, not even in the first paragraph of the Order itself.  Because the Court has not explained how it came to the conclusion that the plants could be liquidated, or any explanation as to why interested parties would not be allowed to spend their own money to evaluate the worth of the plants and equipment, the Court has abused its discretion.

Because the Receiver failed to identify the sources of what he considers

17

CETA funds, the Receiver there is no evidence as to what those amounts total, and the Court's failure to identify the source of funds is an abuse of discretion.

These abuses of discretion are  error, and the Court's Orders of March 7, 2025, and April 23, 2025, should be reversed.

**III.  The Court's Orders of March 7, 2025, Approving Liquidation and Interim Distribution and the Court's denial of Reconsideration of that order, signed on April 23, 2025, should be reversed for  failure to follow 28 U.S. C. §§ 2001, 2002 and 2004.**

28 U.S.C. §§ 2001, 2002 and 2004, set out the procedures for the sale of realty and personal property.

As the Court held in *Lamie v. United States Trustee*, 540 U.S. 526, 534, 124 S. Ct. 1023, 1030 (2004), "It is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.' *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) (internal quotation marks omitted) (quoting *United States v.*

*Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), in turn quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)).”

The requirements for the sale of realty and personalty are clearly set out in 28 U.S.C. §§ 2001, 2002 and 2004. There are requirements for public sales and private sales.  There are requirement as to where the sale shall take place, the notice required, the special rules for a private sale and that the rules for the sale of personalty shall be in accordance with section 2001.  Neither the Order Appointing Receiver nor the Order of March 7, 2025, acknowledge the requirements of 28 U.S.C. §§ 2001, 2002 and 2004.

Section 1 of the Court's Order of March 7, 2025, violates the provisions of 28 U.S.C. §§ 2001, 2002 and 2004.  The Court allows the Receiver to "liquidate the CETA equipment pursuant to the authority granted to the Receiver in the appointment order (Doc. 8 at 12)." [ROA. 25-50409.1603] .  Although Section 37 of the Order Appointing Receiver [ROA. 25-50409.311 at 322] appears to give the Receiver carte blanche to disregard  28 U.S.C. §§ 2001, 2002 and 2004, many fixtures in any industrial plant become part of the real property if such fixtures cannot be removed without damage and even the sale of fixtures that can be

removed are still covered by 28 U.S.C. §2004. Appellant contends that the Court

cannot give the Receiver authority to ignore 28 U.S.C. §§ 2001, 2002 and 2004

and that the Court's Order of March 7, 2025, is an abuse of discretion to the extent

it can be read to allow the Receiver to proceed with the sale of equipment "on

terms and in the manner the Receiver deems most beneficial to the Receivership

Estate . . . ." [ROA. 1148] .

## CONCLUSION

The Court's Orders of March 7, 2025, Approving Liquidation and Interim

Distribution and the Court's denial of Reconsideration of that order, signed on

April 23, 2025, should be reversed.

**Respectfully submitted,**

**/s/ *Richard Fuqua***

_____

Richard Fuqua
Attorney in Charge
Fuqua & Associates, PC
8558 Katy Freeway, Suite 119
Houston, Texas 77024
[Tel.] 713-960-0277
[Fax] 713-960-1064

20

Rlfuqua@fuqualegal.com
*Counsel for Defendant-Appellant Roy W. Hill*

## CERTIFICATE OF SERVICE

I certify that the foregoing Defendant-Appellant's brief was electronically filed on the 26th day September, 2025, using the Court's CM/ECF system which will provide a notice of electronic filing to all counsel of record as of the date of this filing, including the following:

1.    Counsel for Defendant-Appellant Roy W. Hill:
      Richard Fuqua,
      8558 Katy Freeway, Ste 119, Houston, TX 77024

2.    Counsel for Plaintiff-Appellee Securities and Exchange Commission:
      Jason J Rose and Jennifer Reese
      United States Securities and Exchange Commission
      Burnett Plaza, Suite 1900, 801 Cherry Street, Unit 18, Fort Worth, Texas 76102

3.    Counsel for Receiver-Appellee Albert C. Black III
      Dennis L. Roossien, Jr.
      Munsch Hardt Kopf & Harr, P.C.
      5090 N. Akard Street, Suite 4000, Dallas, Texas 75201-6659


/s/ *Richard Fuqua*

_____

RICHARD FUQUA, Counsel for
Defendant-Appellant Roy W. Hill

Counsel further certifies that (1) required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an

exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned and is free of viruses.

/s/ *Richard Fuqua*

RICHARD FUQUA, Counsel for
Defendant-Appellant Roy W. Hill

Dated: September 26, 2025

# CERTIFICATE OF COMPLIANCE

With Type-Volume Limitation, Typeface Requirements, and Type Style
Requirements

This brief complies with the type-volume limitation of Fed. R. App. P.
32(a)(7)(B) because this brief contains 3,737 words, excluding the parts of the
brief excepted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.1.

This brief complies with the typeface requirements of Fed. R. App. P.
32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this
brief has been prepared in a proportionally spaced typeface using WordPerfect,
version X7, in Times New Roman font 14 point type face, with at least one inch
margins.

/s/ *Richard Fuqua*

_____

RICHARD FUQUA, Counsel for
Defendant-Appellant Roy W. Hill

Dated: September 26, 2025